U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    FEB 21 2007

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SANDRA ROBERT JACOB, TINA JACOB BROWN and KIRT JACOB, JR., Individually and on behalf of decedent, KIRT JACOB, SR. | * | CIVIL ACTION |
| | * | NUMBER 05-0805 |
| V. | | |
| | * | SECTION "L"(5) |
| CAESARS ENTERTAINMENT, INC. d/b/a GRAND CASINO GULFPORT | | |

## ORDER AND REASONS

Pending before the Court is Defendant Grand Casino Gulfport's Motion for Summary Judgment and to Exclude Expert Reports (Rec. Doc. 83). For the following reasons, this motion is GRANTED.

**I. Factual and Procedural Background**

This litigation results from the death of Mr. Kirt Jacob, Sr. ("the Decedent" or "Mr. Jacob") on March 3, 2005, nearly one month after he visited the Defendant's place of business and was doused with a liquid which leaked from an overhead pipe or drain. The Plaintiffs Sandra Robert Jacob, the Decedent's wife, and Tina Jacob Brown and Kirt Jacob, Jr., the Decedent's children ("Plaintiffs"), brought a wrongful death suit against Caesars Entertainment, Inc., d/b/a Grand Casino Gulfport, on claims of negligence, premises liability and negligence under *res ipsa loquitur*.[1] In their complaint, the Plaintiffs state that Decedent and his wife

---

[1] Caesars Entertainment, Inc. was dismissed as a defendant by this Court's Order of June 6, 2005, after Caesars Entertainment filed a motion for summary judgment alleging it was not the owner of Grand Casino Gulfport. (Rec. Doc. 14). Plaintiffs substituted Grand Casinos of Mississippi, LLC- Gulfport (the "Casino" or "Defendant") as Defendant in Plaintiffs' First Amended Complaint (Rec Doc. 11).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep____
___ Doc. No._____

visited the Grand Casino ("Casino") in Gulfport, Mississippi on or about February 7, 2005, after receiving a voucher for a complimentary room at the Casino's hotel. Plaintiffs allege that as the Decedent's wife was playing poker on the Casino floor, she heard a commotion and turned to see her husband wet with a foul smelling liquid after a ceiling tile fell.[2] A Casino representative approached and offered the Decedent a free shirt from the hotel gift shop. The Jacobs accepted the offer, and Ms. Jacob collected the shirt while Mr. Jacob proceeded to their hotel room, took a shower and changed clothes. The couple then returned to the Casino to resume gambling. The next day, after some additional gambling, they left the Casino and returned to their home in Louisiana. On February 9, 2005, Mr. Jacob returned to work, but missed several days after February 14th due to the onset of flu-like symptoms. On February 18, 2005, he visited his family physician Dr. Robert Albrecht, who diagnosed him with a viral respiratory infection and prescribed the antibiotic Zithromycin. On February 22, 2005, Mr. Jacob was hospitalized at River Parishes Hospital in LaPlace, Louisiana and died there nine days later on March 3, 2005. The cause of death cited by treating physicians was cardiac failure post staph aureus, sepsis and pneumonia. (Dr. Andrew St. Martin Dep. 15).

Plaintiffs brought this suit against the Defendant alleging that Mr. Jacob's infection and subsequent death was caused by the liquid that fell on Mr. Jacob at the Casino. They claim that the liquid, originating from a kitchen floor drain above the Casino level, contained Listeria, a food born pathogen. Furthermore, they deny that his death in anyway resulted from complications related to pacemaker surgery, which the Decedent underwent on January 14, 2005.

---

[2]Ms. Jacob later testified during a deposition that her husband's hair and shirtfront appeared wet. (Sandra Jacob Dep. 21).

The trial on this matter was originally scheduled for January 23, 2006, but was continued until March 5, 2007 due to delays associated with Hurricane Katrina. On January 16, 2007, the Defendant filed the present motion.

## II. The Defendant's Motion for Summary Judgment and to Exclude Expert Reports

In its motion, the Defendant argues that summary judgment should be granted in its favor on all of the Plaintiffs' claims as they fail to present any proof of medical causation and furthermore, their expert opinions regarding causation fail to meet the admissibility standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Defendant states that though the Plaintiffs claim that Mr. Jacob's death resulted from exposure to Listeria at the Casino, there is absolutely no evidence that exists to support these allegations. It is the Defendant's contention that Mr. Jacob died of Methicillin-Resistant Staphylococcus Aureus ("MRSA"), a bacterial virus caused either through his respiratory or viral infection, his hospitalization for the pacemaker, or antibiotics he was prescribed.

## III. Summary Judgment Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Thus, a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S., at 248.

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case and on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party, nor can the non-moving party defeat a motion for summary judgment through "unsubstantiated assertions" or "conclusory allegations." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *see also Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

**IV. Law and Analysis**

In a diversity suit, a federal district court applies state law to substantive issues. The Plaintiffs assert that the law of Mississippi, the situs of the Casino incident, controls in this case, and the Defendant does not dispute this claim for purposes of its motion. Accordingly, the Court applies Mississippi law for purposes of its analysis.

Under Mississippi law, the plaintiff bears the burden of proving that the elements of negligence and premises liability are satisfied. The Court addresses each of these claims and determines that the Plaintiffs cannot establish the essential element of causation. Furthermore,

the Plaintiffs' claim for *res ipsa loquitur* also fails due to the lack of evidence on causation and inapplicability to the case.

## A. Negligence

To establish negligence under Mississippi law, the plaintiff bears the burden of demonstrating that (i) the defendant had a duty to conform to a specific standard of conduct; (ii) the defendant breached the duty; (iii) the breach of the duty was the proximate cause of the plaintiff's injury; and (iv) the plaintiff suffered damage. *Drummond v. Buckley*, 627 So.2d 264, 268 (Miss. 1993). As stated above, the existence of causation, the third prong in this four part test, presents a crucial problem in this case. "To prove proximate cause, the plaintiff must show some reasonable connection between the defendant's breach and the damage that the plaintiff has suffered." *Dickey v. Baptist Mem'l Hosp.-North Ms*, 146 F.3d 262, 267 (5th Cir. 1998) (citing *Burnham v. Tabb*, 508 So.2d 1072, 1074 (Miss. 1987)). "To survive summary judgment, the plaintiff must make a showing that affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." *Dickey*, 146 F.3d at 267 (quoting *Burnham*, 508 So.2d at 1074) (internal quotes omitted). Mississippi law does not approach causation as an issue of specific or general causation. *Estate of Moffett v. SmithKline Beecham Corp.*, 2005 WL 1595664, at *2 (S.D. Miss. 2005). Thus, in the present case, the Plaintiffs are required to demonstrate by a preponderance of the evidence that a causal link exists between the Defendant's actions and Mr. Jacob's death. *See id.*

The Defendant states that the evidence reveals that Mr. Jacob died of toxic shock resulting from MRSA, a form of bacterial infection resistant to antibiotics. MRSA, commonly

5

found on human skin, is transmitted through direct skin contact and only becomes harmful if it enters the bloodstream. Known risk factors associated with MRSA include hospitalization, viral infection and the use of antibiotics. The Decedent had all three known risk factors. Specifically, Mr. Jacob was hospitalized for pacemaker implant surgery in January 2005, a short period before he began to develop flu-like symptoms; Mr. Jacob was treated for flu-like symptoms and diagnosed by his family doctor, Dr. Albrecht, as having contracted a viral infection on February 18, 2005; and Mr. Jacob took the antibiotics Ancef and Keflex following pacemaker implant surgery in January 2005 and took the antibiotic Zithromax prescribed by Dr. Albrecht on February 18.

Moreover, multiple blood and urine cultures taken from the Decedent during his last hospitalization reveal elevated levels of MRSA. No test revealed the presence of Listeria. The Defendant states that the conclusion that MRSA was the medical cause of Mr. Jacob's death and that MRSA and staph aureus were not caused by the exposure to the Casino incident is supported by Dr. Andrew St. Martin, Mr. Jacob's primary treating physician at River Parishes Hospital prior to his death. Dr. Karen Causey, the infectious diseases expert who treated Mr. Jacob at the hospital, also concluded that toxic shock resulting from MRSA present in the Decedent's body caused his death.[3]

---

[3] Upon questioning at her deposition, though Dr. Causey stated that she believed Mr. Jacob died of MRSA brought on by a viral infection, she could not completely rule out that he contracted MRSA at the Casino. (Dr. Karen Causey Dep. 24, 55). Mr. Jacob was exposed to a variety of risks that could cause MRSA, and Dr. Causey was not able to determine with absolute certainty which risk or incident caused the MRSA to develop. (Dr. Causey Dep. 23-24, 55). In any event, the dispute in this case does not concern whether the Casino incident caused Mr. Jacob to develop MRSA resulting in death. The dispute concerns whether he contracted Listeria at the Casino which caused his death. Dr. Causey stated that when tests for bacteria were taken, results indicated that Listeria was not present in the Decedent's body, and she never formed a

The Plaintiffs concede that the Decedent did not contract MRSA as a result of the Casino incident as MRSA is not a common contaminant found in waste water or other water sources. But they deny that MRSA was in any way related to Mr. Jacob's death, notwithstanding the positive test results indicating its presence in his body before he died and notwithstanding the fact that Mr. Jacob was exposed to common risk factors associated with this bacterium. Instead, the Plaintiffs contend that Mr. Jacob died of Listeria, which is a food-borne pathogen found in food products such as meat, poultry, seafood vegetables and dairy products. Plaintiffs claim that Decedent contracted Listeria from the incident at the Casino, postulating that the water which doused the Decedent was previously used to wash meat, fruits or vegetables and contained Listeria. However, the Plaintiffs' only support for this allegation are the reports of their two experts, Dr. Suzanne Parisian and EHA Consulting Group, Inc., neither of whom treated or examined the Decedent or inspected the Casino premises or tested the water which fell on the Decedent. Instead, their review was limited to the Decedent's medical records and deposition testimony.[4] Although these witnesses are qualified by education, training and experience to render opinions, their opinions are not based on sufficient facts or data, and the methodology used by these witnesses is unreliable. Thus, they must be excluded. *See* Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 592-93.

The parties do not dispute that Listeria may only be positively diagnosed through

---

medical opinion that he had Listeria. (Causey Dep. 26, 57, 61, 65).

[4] As the Casino's Maintenance Department records were destroyed by the Hurricane, the Plaintiff's expert EHA attempted to "reconstruct events by virtue of what normally occurs in a food service facility of comparable size from plumbing, food production and menu perspectives." ( EHA Dep. 3).

7

culturing, but none of the various cultures obtained from Mr. Jacob before his death indicate any finding of Listeria or rod-shaped bacterium. Not one piece of medical evidence exists showing that the Decedent contracted Listeria. Furthermore, even if the Decedent had contracted Listeria, there is no evidence that Decedent was exposed to Listeria at the Casino and, more specifically, that the liquid to which Mr. Jacob was exposed contained this bacterium. Unfortunately, the Casino was extensively damaged by Hurricane Katrina and subsequently demolished, and a sample of the liquid substance was never tested by either party.

The relationship between Listeria and the liquid substance is even more tenuous considering the Plaintiffs' own experts' assertions that Listeria is a "common environmental contaminant" (Dr. Susan Parisian Report, Ex. F-3 to Def. Mot. 12)... "ubiquitous in nature"... "found in virtually all food processing environments of raw foods of animal and plant origin...." (EHA Report, Exhibit E to Def. Mot. 5).[5] Thus, even assuming the Decedent did contract Listeria, the number of occasions that the Decedent could have been exposed to the bacterium in other places before or after the Casino incident casts a high level of doubt on the unsubstantiated allegation that he contracted it from the Casino incident. But as stated above, there is no evidence that the Decedent contracted Listeria.

Thus, as the Court determines that the evidence is insufficient for reasonable jurors to conclude that the Defendant's actions caused Mr. Jacob's death, the Plaintiffs cannot maintain a claim for negligence.

### B. Premises Liability

To determine whether the Defendant is entitled to summary judgment as a matter of law

---

[5]

on a premises liability claim under Mississippi law, the Court must make three primary inquiries: (i) whether the injured party was an invitee, licensee, trespasser; (ii) whether a duty was owed to the injured party based on the party's status; and (iii) whether the landowner or business operator breached the duty. *Farmer v. Sam's East, Inc.*, 2007 WL 391592, at *2 (S.D.Miss. Jan. 31, 2007). Though there is no doubt that the Plaintiffs can satisfy the first prong as Mr. Jacob was a business invitee, the Plaintiffs cannot satisfy the last two prongs. The Court places particular emphasis on the sub-elements of the third prong. To determine whether the defendant breached the duty of care, the plaintiff may rely on three different theories to successfully argue a premises liability claim:

> (1) that the defendant's own negligence created a dangerous condition which caused the plaintiff's injury; (2) that the defendant had actual knowledge of a dangerous condition but failed to adequately warn the plaintiff of the danger; and/or (3) that the dangerous condition existed for a sufficient amount of time so that the defendant should have known of the dangerous condition....Under each theory, the plaintiff must first prove that a dangerous condition existed.

*Farmer*, 2007 WL 391592, at *3 (citing *Grammar v. Dollar*, 911 So.2d 619, 624 (Miss. Ct. App. 2005)); *see also Sullivan v. Skate Zone, Inc.*, __So.2d__, 2007 WL 92898, at *1 (Miss. Ct. App. Jan. 16, 2007).

In the present case, the Plaintiffs may not solely rely on the fact that the Decedent was exposed to some liquid substance and he died some weeks later to prove that the liquid substance was dangerous and the cause of his death. No evidence exists showing that the wash water was dangerous other than a witness report that it smelled foul. The Plaintiffs point to Mr. Jacob's flu-like symptoms and subsequent death a few weeks later, and they allege that the water was *probably* used to wash fruits and vegetables and that Listeria is *often* found in raw fruits and vegetables. However, this is nothing more than speculation and conjecture. Even assuming the

water was used to wash fruits and vegetables, there is no evidence as to whether it was contaminated with Listeria.

### C. *Res Ipsa Loquitur*

Third, the Plaintiffs' claim of *res ipsa loquitur* cannot survive a motion for summary judgment. Mississippi courts hold that "the doctrine of *res ipsa loquitur* should be cautiously applied." *Holt v. Summer*, 942 So.2d 284, 289 (Miss. Ct. App. 2006) (internal citations omitted). However, *res ipsa loquitur* may be invoked when circumstantial evidence exists which permits the inference that the defendant was negligent if the facts indicate that the defendant's negligence, more probably than not caused, caused the injury. As explained above, the facts and circumstantial evidence do not indicate that this conclusion has any merit. Moreover, Mississippi courts have held that the doctrine is inapplicable to cases involving claims of premises liability, as the "operator of a business is not an insurer against all injuries." *Jacox v. Circus Circus Mississippi, Inc*, 908 So.2d 181, 184 (Miss. Ct. App. 2005) (citing *Sears, Roebuck & Co. v. Tisdale*, 185 So.2d 916, 917 (Miss. 1966) ("Proof merely of the occurrence of a fall on a floor within a business is insufficient to show negligence on the part of a proprietor...and the doctrine of *res ipsa loquitur* is inapplicable in cases of this kind.").

### V. Conclusion

Accordingly, for the above reasons, the Defendant's Motion for Summary Judgment and Exclusion of Expert Reports is GRANTED.

New Orleans, Louisiana, this 21st day of February, 2007.

UNITED STATES DISTRICT JUDGE